FILE IN RECORD

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA
RECEIVED
2001 JAN 25 AM 10: 49
JAN 2 4 2001
LORETTA G. WHYTE
CLERK
Chambers of
Judge Edith Brown Clement

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

JAMES T. VIENNE

       Plaintiff

CASE NO.: 99-3716

VERSUS

SECTION "N"

AMERICAN HONDA MOTOR CO., INC.,
A Foreign Corporation, HONDA NORTH
AMERICA R&D, INC., A Foreign Corporation,
HONDA MOTOR CO., LTD., A Foreign Corporation,
HONDA R&D CO., LTD., A Foreign Corporation,
ABC INSURANCE COMPANY and XYZ INSURANCE
COMPANY

JUDGE: EDITH B. CLEMENT

MAG: KAREN W. ROBY

       Defendants

*******************************************************************************

# DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE OR LIMIT TESTIMONY OF KEVIN C. BREEN

      Kevin Breen has been retained in this matter by the Honda defendants to render an opinion regarding ATV design and manufacture, ATV riding and accident reconstruction. (See Pre-Trial Order). Mr. Breen's report was provided to Plaintiff's counsel on December 5, 2000. A supplemental report dated December 28, 2000, was provided to Plaintiff's counsel on December 29, 2000. On January 22, 2001, Plaintiff filed a Motion in Limine to Exclude or Limit Testimony of

Kevin C. Breen. Plaintiff argues that Mr. Breen's opinion on causation should be excluded on the grounds that it is based on speculation and because Mr. Breen did not personally examine the vehicle. This argument is unfounded.

## KEVIN C. BREEN'S QUALIFICATIONS

Kevin Breen has a Master's Degree in Industrial Engineering which he obtained in 1984. Mr. Breen has written publications and given presentations regarding ATVs and accident reconstruction. As a member of the Society of Automotive Engineers, he has served as the Chairman of the Special Purpose Vehicle Committee which includes All-Terrain Vehicles. He is also a member of several other professional organizations. He has been consulted with and given expert testimony in the areas of accident reconstruction and ATV riding in other ATV litigation. (See Kevin C. Breen's Resume, attached hereto as Exhibit "A.")

## KEVIN C. BREEN'S INVESTIGATION AND RECONSTRUCTION

Prior to producing his December 5, 2000 report, Mr. Breen received and reviewed numerous materials related to this litigation as listed in his report to include:

    Plaintiff's Responses to Request for Production of Documents
    Plaintiff's Answers to Interrogatories
    Photographs of the accident vehicle taken by Chris Christensen
    Photographs of the accident scene taken by Chris Christensen
    Photographs of the accident scene and vehicle produced by Plaintiff
    Photographs of the scene and vehicle taken by the sheriff's office
    Complaint
    Supplemental and Amended Complaint
    American Honda's Answers to Plaintiff's Complaint
    HMC Answers to Plaintiff's Complaint
    HRD Answers to Plaintiff's Complaint
    HRD's Answers to Plaintiff's Complaint & First Supplemental and Amending Complaint
    HNA's Answers to Plaintiff's Complaint & First Supplemental and Amending Complaint
    Deposition of James Vienne
    Deposition of David Vienne
    Deposition of Chet Caillouet
    Deposition of Wendy Dufrene
    Lafourche Parish Sheriff's Office Accident Report

Lockport Volunteer Fire Department Incident Report
911 records from Lafourche Parish
ATC 200S 1984 Honda Owner's Manual
Shop Manual
Post Consent Decree Documents
Photographs of the Accident Scene taken by Assertive Legal Services, Inc.
Report of Robert Wright
Report of Randy Nelson
Report of Stuart Statler
Report of Edward Karnes
Report of G. Randolph Rice
Report of Cornelius Gorman
Deposition of Dudley Stadler
Deposition of Mary Stadler
Deposition of Danny Eschete
Deposition of Waylon Orgeron
Deposition of Susan R. Andrews, M.D.
Deposition of Adrian Blotner, M.D.
Deposition of Philip Pfeffer
Deposition of Mark K. Rosenbloom, M.D.
Supplementary report of Dr. Adrian Blotner
Deposition of Sergeant Peter Knight
Supplementary report of Dr. Robert Wright
Video - Hanners v. Honda Test Riding - Glenn Bolton
Video - Lexpert Dr. Robert Wright
Deposition of Dr. Robert Wright
Deposition of Stuart Statler
Deposition of Edward Karnes
Deposition of Randy Nelson
Videotape from Ed Karnes - "A Perspective On ATV Safety & Your Safety Commitment"
Continuation deposition of Randy Nelson

(See Mr. Breen's December 5, 2000 report, attached hereto as Exhibit "B.")

As part of the investigation the following tasks were performed as per Mr. Breen's report:

1.      The subject vehicle and accident site were examined and documented on November 17, 2000.
2.      The photographs taken as a part of the sheriff's investigation were utilized to photogrammetrically analyze the site and various documented accident positions.
3.      Scale diagrams of the accident site, noted rest positions and skid/transfer marks were prepared.
4.      The performance and operating characteristics of the 1984 Honda ATC 200S were evaluated.
5.      The information contained in the Owner's Manual and on-product labels were reviewed.

6.   A dynamic evaluation of the operation of the 1984 ATC 200S was conducted.
7.   Technical and governmental literature associated with ATV studies and use were reviewed.

(See Mr. Breen's December 5, 2000 report, attached hereto as Exhibit "B.")

Mr. Breen supplemented his report on December 28, 2000, after reviewing the depositions of four (4) additional witnesses, including Angela Kass, Walter Floyd, Royce Brown and Rossiter Barkhurst, which were completed prior to the discovery deadline but after the deadline for exchanging expert reports. (See Mr. Breen's Supplemental Report, dated December 28, 2000, attached hereto as Exhibit "C").

Plaintiff criticizes Mr. Breen and his opinions regarding the accident for not personally having inspected the vehicle at issue. However, the vehicle had been inspected by Mr. Roger Spiegler, who is a colleague of Mr. Breen's at Breen & Associates, Inc., prior to Mr. Breen's having issued his initial report. Mr. Spiegler has been employed at Breen & Associates, Inc. since 1976. He has a degree in Industrial Graphics Technology and has done field documentation of ATV inspections and accident site inspections on approximately fifty occasions. Mr. Spiegler is currently a Senior Researcher at Breen & Associates, Inc. and is responsible for project support in areas including, but not limited to, accident investigation. (See Roger Spiegler's Curriculum Vitae, attached hereto as Exhibit "D.") In forming his opinion, Mr. Breen reviewed Mr. Spiegler's photographs and findings regarding the vehicle in question, in addition to reviewing the documents and performing the tasks listed in his report. It should be noted that Plaintiff's counsel, Michael Maginnis, was present at Mr. Spiegler's inspection of the vehicle which took place on November 17, 2000.

Federal Rule of Civil Procedure 703 provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the

> hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

The factual findings of Mr. Spiegler regarding his inspection of the vehicle are clearly the type of data reasonably relied upon by experts in the field of accident reconstruction. Further, Plaintiff's counsel does not dispute the data itself, only that Mr. Breen did not inspect the vehicle personally.    Plaintiff's claim that Mr. Breen's opinions are based upon speculation and conjecture are also unfounded. A review of his report clearly indicates that he did an in-depth analysis in performing his accident reconstruction of this case. There is testimony from fact witnesses that Mr. Vienne had prior problems with his vehicle; and, in fact, Mr. Royce Brown gave deposition testimony on December 14, 2000, that David Vienne, Plaintiff's brother and the first person on the scene after the collision, advised him (Brown) that the engine was running open, and the throttle was stuck. (See Breen's supplemental report, dated December 28, 2000, attached as Exhibit "C."; Deposition of Royce Brown, pp. 12-15, attached hereto as Exhibit "E"). Several witnesses have confirmed that following the accident there were discussions of problems with the throttle sticking on the ATC.

Mr. Breen has reviewed pleadings, discovery responses along with photographs of the scene and vehicle. He has read and reviewed the depositions of numerous fact and expert witnesses, reports of expert witnesses, the accident report and the owner's manual. More importantly, Mr. Breen actually participated in the test riding of an exemplar vehicle at the accident scene and off-site. Clearly, his opinions are based on the facts, data and the investigations which are relied upon by engineers in accident reconstruction and not upon speculation and conjecture as Plaintiff claims.

## PLAINTIFF'S MOTION IN LIMINE IS UNTIMELY

Plaintiff does not object to specific exhibits; he merely questions the ability of Breen to

render his opinions and the bases upon which the opinions are rendered.  Plaintiff's Motion is a

Daubert motion.  Plaintiff even cites Daubert in his motion.  This "Daubert" motion is untimely.

The Minute Entry regarding the preliminary Pre-Trial Conference held on June 23, 2000, provided

in pertinent part:

> All pre-trial motions, including motions in limine regarding the admissibility of expert testimony, shall be filed and served in sufficient time to permit hearing thereon no later than 30 days prior to the trial date.  Any motions filed in violation of this order shall be deemed waived unless good cause is shown.  All other motions in liming shall e allowed to be filed up to the time of trial or as otherwise ordered by the Court.  (emphasis added)

Defendants therefore object to Plaintiff's Motion in Limine as untimely.

## CONCLUSION

In conclusion, the Honda defendants respectfully request that this Honorable Court deny

Plaintiff's Motion in Limine to Exclude or Limit Testimony of Kevin C. Breen for the reasons set

forth above.

Respectfully submitted,

**DUPLASS, ZWAIN, BOURGEOIS & MORTON**

**LAWRENCE J. DUPLASS, T.A. #5199**
**GUYTON H. VALDIN, JR., #20621**
3838 North Causeway Blvd.
2900 Three Lakeway Center
Metairie, LA 70002
Telephone: (504) 832-3700
**Attorneys for Defendants, American Honda Motor Co.,**
**Inc., Honda Motor Co., Ltd., and Honda R&D Co., Ltd.**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been forwarded to all counsel of

record via hand delivery on the *24* day of *January* , 2001.

Michael J. Maginnis
Jose R. Cot
MAGINNIS & HURLEY
365 Canal Street, Suite 2750
New Orleans, LA 70130
**Counsel for Plaintiff, James T. Vienne**

_____
GUYTON H. VALDIN, JR.

# Breen & Associates, Inc.

### Research Consultants

1

10 Years
1989-1999

## CURRICULUM VITAE

### Kevin C. Breen

Breen & Associates, Inc. is an independent, research based consulting firm providing clients technical information related to accident analysis, human factors, environmental management, and product/materials safety. Founded in 1989, the firm's staff includes scientists, engineers, and researchers supported by a research facility, graphics group, and field investigation teams. Clients currently include manufacturers, insurance companies, law firms, financial/real " estate institutions, governmental organizations, and individuals. Based in Ft. Myers, Florida, with affiliate offices in Miami and Michigan, the firm is providing technical and investigation services throughout the U. S., Canada, Europe, and the Caribbean.

## AREAS OF SPECIALIZATION

Accident Analysis
Human Factors
Design Performance Analysis
Failure Analysis
Risk Analysis

## EDUCATION

Master of Industrial Engineering
Midwest College of Engineering (1984)
Emphasis: Human Factors

Bachelor of Science in Engineering
Department of Materials Engineering
University of Illinois (1978)

Licensed Professional Engineer (P.E.)
Wisconsin (32092)



P.O. Box 08489
15951 McGregor Boulevard Fort Myers, Florida 33908-2568
(941) 482-0500 Fax (941) 482-2941

Michigan Affiliate

Miami Affiliate

2

## PROFESSIONAL EXPERIENCE

1989 - PRESENT:                                          K. C. Breen & Associates, Inc.
                                                         Fort Myers, Florida  33908

Principal of a multi-disciplined consulting organization providing research services in accident reconstruction, risk analysis, and related product design analysis (vehicle, recreational, marine, youth, specialty vehicles, and consumer). Projects include accident/safety data analysis, testing, and human factors/design analysis. The results of these projects as well as previous projects have been presented in a broad range of local and national safety forums relating to research, design development, education, and regulation/litigation.

1988 - 1989:                                             Packer Engineering - Southeast, Inc.
                                                         Fort Myers, Florida  33908

Vice President responsible for the technical project work and facility development associated with the Southeast office. Project areas include automotive design/testing, marine product analysis, youth/human performance, recreation product design special equipment design, safety/accident data analysis, and testing and accident reconstruction. Expertise in analysis and problem solutions related to multi-disciplined issues in design/testing, education research, and regulation/litigation.

1984 - 1988:                                             Packer Engineering - Troy, Inc.
                                                         Troy, Michigan  48083

Vice President responsible for the development and technical coordination of engineering projects for Packer Engineering office in Troy, Michigan. In addition; principal engineer on projects dealing with accident reconstruction, vehicle handling/dynamics, automotive testing, vehicle design, and broad scope analysis of technical projects. Included in these projects have been recreation vehicle design analysis, human performance, review/analysis of instruction and warning, photogrammetry, and site analysis.

1976 - 1984:                                             Packer Engineering Associates, Inc.
                                                         Naperville, Illinois  60566

Initially employed as laboratory technologist/supervisor with technical and coordination responsibility for a wide range of engineering research and investigation. Included in this position were automobile crash tests, accident investigations, aircraft/automotive component tests, failure analysis, simulated service, and field data acquisition. Significant experience was gained in standard engineering test techniques and analyses; including nondestructive evaluation (NDE), experimental stress analysis (ESA), electron microscopy (SEM/TEM/EDS), and statistics. Subsequently, held position of staff consultant in the automotive/safety engineering group working to develop and apply multi-disciplined investigative techniques to project performance/failure analysis and accident reconstruction/avoidance analysis. Typical project function has ranged from test engineer to principal investigator and includes direction of multi-disciplined research and investigation, and project management.

1975 - 1976:                                    International Harvester Company
                                                              Chicago, Illinois

Employed by International Harvester as a member to the Wisconsin Steel Division's quality assurance staff.   In that position, duties included supervision and scheduling of quality assurance inspectors, review and analysis of project quality reports, and production procedure recommendations.   In addition, special projects related to improved product quality, yield, and product line were conducted.

## ADDITIONAL COURSES/SEMINARS

Fall 1978
Corrosion - Principles and Prevention
        Chicago Western ASM

February 1979
Accident Reconstruction Seminar
        NPD-PE-DuPage County States Attorney

Fall 1979
Analytical Techniques
        Chicago Western ASM

Fall 1980
Mechanism Design
        Midwest College of Engineering

Winter, Spring 1981
Failure Mechanisms I & II
        University of Illinois

Fall 1982
Non-Destructive Evaluation
        University of Illinois

October 1982
High Performance Driving Course
        Bondurant School of Performance Driving

June 1983
Motorcycle Safety
        MSF Northern Illinois University

April 1984
Special Problems in Accident Reconstruction
        IPTM Workshop
        University of North Florida

4

December 1990
Crash Reconstruction: Purpose and Principles
        AAAM Course

January 1992
Accident Investigation Seminar - Marine
        ABYC Course

July 1995
Accidents
        ABYC Marine Seminar

May 1996
The Nikon School of Photography

April 1998
Marine Accident Investigation
        ABYC Marine Seminar

August 1998
Biomechanics of Impact Trauma
        AAAM Course

## PUBLICATIONS AND PRESENTATIONS

February 1979
"Accident Investigation Seminar"
Intermicro
Chicago, Illinois

1980
"Transmission Shift Mechanism Migration"
Washington, D.C.
Submission to National Highway Traffic Safety Administration

1982
"Yeadon/NHTSA Wheel Analysis"
Submission to National Highway Traffic Safety Administration
Washington, D.C.

Spring 1983
"Driver performance Considerations in Accident Avoidance Steering Maneuvers"
Masters Degree Research Project

September 1984
"Accident Documentation Using Stereo and Photogrammetric Techniques"
Submission to IATAR, Naperville, Illinois

5

June 1985
"Brief Technical Discussion of the All-Terrain Vehicle"
Presentation to Consumer Product Safety Commission
Dallas, Texas

February 1986
"An Overview of the Design and Operation of ATVs"
Society of Automotive Engineers
Detroit, Michigan

September 1986
"The Application of Photogrammetry to Accident Reconstruction"
Society of Automotive Engineers
Dearborn, Michigan

November 1987
"Design and Accident Countermeasures Related to ATVs"
National Association of Attorneys General
Los Angeles, California

September 1992
"Operator and Environmental Factors Associated with Off-Road Equipment Risk"
Society of Automotive Engineers
Milwaukee, Wisconsin

March 1993
"Investigation and Analysis of Marine Accidents"
Society of Automotive Engineers
Detroit, Michigan

August 1995
"Developments in Alternate Marine Transportation"
Society of Automotive Engineers
Costa Mesa, California

May 1997
"Four-Wheeled ATVs, Trends in the 1990's with Focus on Youth Safety"
CPSC, Chairman's Forum on ATVs
Washington, D.C.

September 1997
"Failure Analysis / Accident Analysis Motorsport Case Study"
ASM International
Indianapolis, Indiana

March 1999
"Personal Watercraft-Off-Throttle Steering Research"
NASBLA
Fort Myers, Florida

An administration fee is associated with projects, which covers cost associated with routine copies, faxes, long distance phone service, and postage/UPS.

Evidence is maintained in a reasonably secure environment.  BAI handles evidence in accordance with applicable ASTM standards.  Insurance coverage pays for replacement cost, not the value which may be associated with research, litigation or historical value. BAI cannot assure that evidence will not be affected by theft, vandalism, or natural disasters, etc. Our responsibility is limited to replacement of like equipment unless other arrangements are made in writing, and additional storage costs may be incurred. If you would like to add additional insurance and be responsible for the additional costs please notify this office as soon as possible.  All evidence is stored with the condition that the Client agrees to hold BAI harmless in the event of such loss.

Authorization and/or retention of BAI to initiate work, and/or utilization of any BAI work product, shall constitute acceptance of the above agreement by the Client.

Effective April 1, 2000

Page 3

Breen & Associates, Inc.

December 1999
"Staged Watercraft Collision Demonstrations"
USCG/Underwriter's Laboratory
Lake X, Florida

## PROFESSIONAL AFFILIATIONS

Society of Automotive Engineers (SAE)
      Special Purpose Vehicle Committee - Chairman
      Specialized Vehicle and Equipment Division - Executive Committee
      Accident Investigation Practices, Standards Committee - Member
Human Factors and Ergonomics Society (HFES)
Association for the Advancement of Automotive Medicine (AAAM)
National Society of Professional Engineers (NSPE)
Florida Engineering Society (FES)
Society of Accident Reconstruction (SOAR)
American Boat & Yacht Council (ABYC)

## ADDITIONAL ACTIVITIES

Certified Scuba Diver (PADI)
Licensed Motorcycle Operator
Boating Safety Course (USPS)
Photography
Off-Shore Race Committee Volunteer

August 2000

# Breen & Associates, Inc.
### Research Consultants

# VIENNE / DZBM
# INVESTIGATIVE REPORT

**Submitted to:**

**Guyton Valdin**
**Duplass, Zwain, Bourgeois & Morton**
**Three Lakeway Center, Suite 2900**
**3838 N. Causeway Boulevard**
**Metairie, LA 70002**



DEFENDANT'S
EXHIBIT
"B"

Michigan Affiliate

P.O. Box 8489
15951 McGregor Boulevard Fort Myers, Florida 33908-2568
(941) 482-0500 Fax (941) 482-2941

Miami Affiliate

# Breen & Associates, Inc.
### Research Consultants

**Vienne/DZBM**
**Investigative Report**
**December 5, 2000**

Since 1989

## BACKGROUND

Breen & Associates, Inc. (BAI) was requested to provide technical assistance concerning litigation that arose as a result of a single vehicle off-road accident where Mr. James Vienne was injured.

Reportedly, on December 23, 1998 Vienne was operating a 1984 Honda ATC 200S, three-wheeled All-Terrain Vehicle (ATV) on a gravel road in Lockport, LaFourche Parish, Louisiana. According to the information provided he was approaching a closed gate. The investigation following the accident noted the vehicle to be near/against the fence in a damaged condition. Vienne was lying face down ~40 feet from the vehicle and fence. Vienne had sustained a head injury and has no recollection of the accident. There were no identified eyewitnesses to the incident.

Prior to this date the following materials have been received and reviewed:

Plaintiff's Responses To Request For Production Of Documents
Plaintiff's Answers To Interrogatories
Photographs Of The Accident Vehicle Taken By Chris Christensen
Photographs Of The Accident Scene Taken By Chris Christensen
Photographs Of The Accident Scene And Vehicle Produced By Plaintiff
Photographs Of The Scene And Vehicle Taken By Sheriff's Office
Complaint
Supplemental And Amended Complaint
American Honda's Answers To Plaintiff's Complaint
HMC Answers To Planintiff's Complaint
HRD Answers To Plaintiff's Complaint
HRD's Answers To Plaintiff's Complaint & First Supplemental & Amending Complaint
HNA's Answer to Plaintiff's Complaint & First Supplemental & Amending Complaint
Deposition Of James Vienne, dated 4/4/00
Deposition Of David Vienne, dated 7/19/00
Deposition Of Chet Caillouet, dated 9/8/00
Deposition Of Wendy Dufrene, dated 9/8/00
Lafourche Parish Sheriff's Office Accident Report
Lockport Volunteer Fire Department Incident Report
911 Records From Lafourche Parish
ATC200S 1984 Honda Owner's Manual

P.O. Box 08489
15951 McGregor Boulevard Fort Myers, Florida 33908-2568
(941) 482-0500 Fax (941) 482-2941

Michigan Affiliate                                                                 Miami Affiliate

Vienne/DZBM
Page 2

Shop Manual
Post Consent Decree Documents
Photographs Of The Accident Scene Taken By Assertive Legal Services
Report Of Robert Wright, dated 10/16/00
Report Of Randy Nelson, undated
Report Of Stuart Statler, dated 10/15/00
Report of Edward Karnes, dated 10/17/00
Report Of G. Randolph Rice, dated 10/18/00
Report Of Cornelius Gorman, dated 10/18/00
Deposition of Dudley Anthony Stadler, dated 9/8/00
Deposition of Mary Stadler, dated 9/8/00
Deposition of Danny Eschete, dated 9/8/00
Deposition of Waylon Mark Orgeron, dated 10/10/00
Deposition of Susan R. Andrews, dated 10/23/00
Deposition of Adrian Blotner, dated 10/23/00
Deposition of Philip Paul Pfeffer, dated 10/13/00
Deposition of Mark K. Rosenbloom, dated 10/25/00
Supplementary Report of Dr. Adrian Blotner, dated 9/27/00
Deposition of Sergeant Peter James Knight, dated 11/08/00
Supplemental Report of Dr. Robert Wright, dated 11/9/00
Video-Hanners vs. Honda Test Riding-Glenn Bolton Honda 1985 250E Big Red , 7/1/92
Video - Lexpert Dr. Robert Wright ATV Runs
Deposition of Robert Wright, dated 11/15/00
Deposition of Stuart Statler, dated 11/16/00
Deposition of Edward Karnes, dated 11/20/00
Deposition of Randall Alan Nelson, dated 11/21/00
Videotape From Ed Karnes Entitled "A Perspective On ATV Safety & Your Safety Commitment"
Continuation Deposition of Randy Nelson, dated 11/27/00

**INVESTIGATION**

As a part of this investigation the following tasks have been performed:

1. The Subject vehicle and accident site were examined and documented on November 17, 2000 *(Attachment A)*.

2. The photographs taken as a part of the Sheriff's investigation were utilized to photogrammetrically analyze the site and various documented accident positions *(Attachment B)*.

3. Scale diagrams of the accident site, noted rest positions and skid/transfer marks were prepared *(Attachment C)*.

Vienne/DZBM
Page 3

4. The performance and operating characteristics of the 1984 Honda 200S ATC was evaluated *(Attachment D)*.

5. The information contained in the Owner's Manual and on-product labels was reviewed.

6. A dynamic evaluation of the operation of the 1984 200S ATC was conducted, videotape(s) are available.

7. Technical and governmental literature associated with ATV studies and use was reviewed *(Attachment E)*.

## ANALYSIS

### Vehicle

The 1984 ATC200S is a recreational oriented vehicle designed to accommodate transportation needs in an off-road environment. Combining characteristics of overall size and weight, stability, maneuverability, controllability, adequate performance capabilities, and ability to traverse various terrain/surface features, the vehicle is appropriately designed for use within a broad range of off-road applications.

Among the key considerations are:

*Appropriate size and weight to accommodate a single operator.
*Compatibility with various off-road surfaces.
*Compatibility with various off-road terrain.
*Ease of operation.
*Appropriate power, braking and controls.

Steering of the vehicle is accomplished by using a conventional motorcycle handlebar configuration. Directional control is maintained by proportional input to the handlebar for a given speed and desired path change. Steering performance can be enhanced, if preferred, by utilizing the rider-active weight transfer techniques which are described in the Owner's Manual. These techniques are easily developed by the operator and are natural human responses to external body forces generated during normal operation of all vehicles. The overall handling of the ATC200S is an appropriate balance of stability, maneuverability, and controllability.

Suspension of the ATC200S is a combination of low pressure, tubeless tires and mechanical shock absorbers combined with environmental and operator interactions. Upon contact with obstacles typically associated with off-road riding, such as rocks, logs, holes, ruts, bumps, etc., shock absorption is provided by the interaction between the

Vienne/DZBM
Page 4

obstacle and this suspension system. Low tire pressure combined with a large tire contact area assists management of energy dissipation through tire deformation that results in controlled deceleration. This suspension system combination of mechanical shocks and low pressure tires results in significantly reduced levels of forces ultimately transmitted to the operator. The mechanical shock absorbers utilized on the ATC200S are typical of those utilized on off-road motorcycles and other ATVs.

The height of the center of gravity (CG) of the ATC200S was measured to be 15.3 inches above ground level, which is typical of comparable off-road vehicles. Configuration of the vehicle/operator system provides an optimum location for the operator to select a path of travel and to avoid hazards in the off-road environment. Reconfiguration of the vehicle to significantly lower the CG location would reduce ground clearance, reduce operator visibility, and ultimately reduce operator control.

Analysis of the static stability characteristics described by Dr. Wright does not take into account the dynamic effects of the vehicle in operation. For example, the static stability coefficient of a bicycle and rider as determined using his approach would be nearly zero, and that in fact a stationary bicycle will fall down if you do not provide support. However, a bicycle can easily and successfully be ridden by very diverse people, in very diverse situations and dynamic stability consistent with the needs of users in off-road settings. In addition, the vehicle system provides the rider with key human factors cues as stability limits are being approached that permit the operator to adjust speed or other control/path inputs so as to minimize and prevent loss of control.

The low-pressure style tires provide both appropriate traction and floatation to allow the ATC to traverse both soft and firm off-road surfaces. In addition, the relatively large tire contact patch and compliant structure easily accommodate changes in weight transfer during turning or while riding on slopes. This weight transfer in effect creates differential tire traction while making turns. This allows the vehicle to have constant predictable torque to the driven axle (rear) tires at all times, which is preferred and desirable in off-road operation. The use of a mechanical differential is generally not used for this reason and the potential of introducing loss of control due to its function. There are ATVs that are utility focused that include mechanical differentials for flat surface, low speed operation. The Owner's Manual and on-product labels warn of the risk associated with use of the vehicle in the differential mode *(Attachment F)*.

## CPSC

The Consumer Product Safety Commission (CPSC) conducted an investigation /evaluation concerning accidents associated with the use of ATVs beginning in 1984 and terminating in 1991. The CPSC investigation determined:

Vienne/DZBM
Page 5

1. There is no data that indicates the risk of injury/accidents associated with the use of ATVs was unreasonable when compared to other motorized recreational activities, such as snowmobiles and off-road motorcycles.

2. The majority (~80%) of reported accidents involving ATVs are associated with operator related factors; such as misuse, operator error, etc. A small number (~5%) of studied accidents are due to mechanical/maintenance issues.

3. The risk of injury/death when using three-wheeled ATVs is comparable to two-wheeled, off-road motorcycles and four-wheeled ATVs.

4. There is no data or basis that would have indicated the need/cause for a ban, recall, or manufacturer buy-back program of the ATC200S.

5. After specific study by CPSC engineering staff, there was no reported finding of a defect with the ATC200S.

6. The incorporation of a mechanical differential was not advisable, or recommended.

7. The increase and decrease in ATV accidents is generally attributable to an increase in both number of vehicles and vehicle use patterns.

8. The use of a Rollover Protective Structure (ROPS) is not recommended or advised for application on ATVs. The CPSC identified no data that demonstrates a safety benefit associated with a ROPS.

## ROPS

Modifying the ATC200S to include a ROPS with restraint system introduces numerous use limitations and potential hazards, such as:

1. Intended usefulness of the vehicle is diminished by limiting accessibility of environments.

2. The restraint system limits operator movement, reducing the ability of the operator to control the handling of the vehicle.

3. New hazards are created when the operator chooses not to use the restraint system or helmet.

4. Overall vehicle performance; such as accelerating, braking, turning, and slope riding, is reduced.

Breen & Associates, Inc.

Vienne/DZBM
Page 6

5.   Overall vehicle weight is increased, resulting in transporting and additional maintenance considerations.

6.   Presence of an overhead structure increases the CG height and inertial properties of the vehicle and reduces stability.

7.   Greater vehicle weight means greater energy created in impact/upset events that must be dissipated, resulting in more violent collisions.

8.   Presence of an overhead structure creates additional objects in the path of the vehicle, resulting in unexpected loading conditions that can affect stability.

9.   Ability of the operator to manually remove/dislodge the vehicle from certain situations that may occur in the off-road environment is significantly reduced due to the vehicle's greater overall dimensions and weight.

## ACCIDENT

The subject vehicle was originally manufactured in October 1983 and was purchased used by Vienne. The vehicle was over 15 years old at the time of the accident.

The subject vehicle was examined on November 17, 2000, and was found to be in a poorly maintained and deteriorated state of mechanical condition.  Lack of a functioning rear brake due to missing/rusted components was noted, and file information indicates that the rear brake system has been in this condition at the time of the accident.  Also noted was a broken and missing front brake lever that may have been due to this accident.

Paint transfer marks similar to the paint color on the gate were observed on the left front fork tube, front side of the throttle lever housing, and possibly rear rack at the right front corner.  Damage included broken brake levers, cracked front fender, bent rear rack, and fractured crankcase.  In addition, the steering head and rear axle were found to have excessive play; the throttle lever was frozen; the throttle cable had been repaired with electrical tape, and the brake pedal, brake lever arm, taillight, neutral indicator, and decompression cable were missing.  Non-stock parts included brush bars in the foot control area, headlight assembly, rear fender, and the tires were found to be from three different manufacturers.

The accident site is a rural dirt/gravel road nominally 10 feet wide with a minor left-hand curve approaching the gate.  Analysis of the site investigation and photos indicate that Vienne's point of rest was ~ 40 feet from the fence/gate and the two documented tire marks start after that point. Also noted was a hat located over 200 feet from the fence.

Breen & Associates, Inc.

Vienne/DZBM
Page 7

The damage to the subject vehicle, markings on the fence and vehicle testing confirm that the impact with the fence occurred at a speed of at least 15-20 mph.  From 20 mph the 200S ATC, with properly functioning brakes, can easily be stopped in less than 40 feet.  Further, it has been suggested that a steer input of as little as 5 degrees would lead to loss of control at speeds of 20-25 mph.  The ATC 200S can be controlled at steer inputs in excess of 5 degrees at speeds of 20-25mph.  Further, there is no evidence that indicates that Vienne attempted that type of maneuver.

Vehicle riding at the accident site has shown that at 20 to 25 mph steer inputs of 5 degrees does not cause a loss of control and that assumption is not correct.  In fact, the vehicle is easy to control for various maneuvers in the accident area, videotape is available.

The available evidence and vehicle performance characteristics indicates that Vienne was off the vehicle prior to the start of the noted tire marks, likely at a speed in excess of 20-25 mph.  There is no indication of any steer or brake input prior to that point.  If Vienne had continued at 25 mph he would have had approximately one (1) second prior to contacting at the fence.  Typical unimpaired human factors response times to emergency situations is in the 1.2 to 3.0 second range.  It is also noted that there were and continued to be problems with the throttle becoming stuck due to maintenance problems.

Based on a scientific analysis a likely scenario of the subject accident is as follows:

- Vienne was traveling toward the fence/gate at a speed in the 25 plus mph range on a vehicle that he was aware had a history of the throttle sticking and brakes in poor condition.

- At a distance beyond 40 feet from the fence he realized that at the speed he was traveling, and the vehicle's mechanical condition, he was likely to collide with the fence.

- At a point near the last second he elected to jump off the vehicle in an attempt to avoid the impending collision.

- As a result of him jumping from the vehicle, he forcefully impacted the ground and was injured.

- The vehicle continued in a forward direction out of control due to the lack of an operator.  As a result, the noted tire marks were generated and the vehicle crashed into the fence/gate at a speed in excess of 15-20 mph.

Vienne/DZBM
Page 8

Other combinations of events may be related to this accident, however due to lack of information a detailed analysis has been conducted at this point. Key factors relating to this accident include the poorly maintained condition of the vehicle (steering, brakes, and throttle), forcible contact with the fence and the Operator separating from the vehicle ~ 40 feet from the fence. There is no indication or scientific evidence that vehicle stability or lack of maneuverability is related to the occurrence of this accident. Rather, the accident is due to the mechanical condition of the subject vehicle and improper operator choices.

## FINDINGS

Based upon the above investigation and analysis the following conclusions are offered at this time. As additional information becomes available we will review and provide further technical input as is appropriate. A current CV, Litigation List, and Fee Schedule are attached *(Attachment G)*.

1.    The design and performance characteristics of the 1984 ATC200S are appropriate for its intended use, and the vehicle is not defective.

2.    Vehicles such as the ATC200S provide a useful form of off-road transportation.

3.    Information contained in the on-product labels and Owner's Manual, along with the vehicle itself, provide appropriate information and input in order to operate the ATC200S in a safe and responsible manner.

4.    A review of the CPSC investigation and related data regarding accidents involving ATVs included the following determinations:

    A.    The risk associated with ATV use is not unreasonable when compared to other motorized recreational activities.

    B.    The majority of reported accidents involving ATVs are associated with operator related factors.

    C.    The accident rate is nominally the same for three-wheeled ATVs, four-wheeled ATVs, and two-wheeled, off-road motorcycles.

Vienne/DZBM
Page 9

    D.     There was no finding of a defect with the ATC200S.

    E.     ATVs provide a useful form of off-road transportation for which there is no close substitute.

    F.     Modification of ATVs to include a ROPS is not recommended.

    G.     Incorporation of a mechanical differential was not advisable.

5.    Modifying the ATC200S to include a rollover protective structure (ROPS) with restraint system introduces numerous use limitations and potential hazards, is not recommended, and would not have affected the subject accident.

6.    The cause(s) of the subject accident is due to poor vehicle condition and inappropriate operation and not related to the design or operating characteristics of the ATC200S.

Respectfully submitted,

Kevin C. Breen

Internal technical review by,

Neil Cichy

# Breen & Associates, Inc.
### Research Consultants

Since 1989

December 28, 2000

Mr. Guyton H. Valdin, Jr.
Duplass, Zwain, Bourgeois & Morton
Three Lakeway Center, Suite 2900
3838 N. Causeway Boulevard
Metairie, LA 70002

Re: Vienne/DZBM
Project No. L10251

Dear Mr. Valdin:

This letter is intended to briefly update our review and analysis concerning the above-captioned project since our December 5, 2000 Investigative Report.

In addition to the materials previously identified, the following additional materials have been received and reviewed:

    Deposition of Angela Kass, dated 12/01/00
    Deposition of Walter Floyd, dated 12/01/00
    Deposition of Royce Brown, dated 12/14/00
    Deposition of Rossiter Barkhurst, dated 12/13/00

Both Mr. Brown and Mr. Barkhurst confirm that following the accident there was discussion of problems with the throttle sticking on the ATC that James Vienne was operating. In addition, Mr. Brown indicates that David Vienne, James' brother and the first person on the scene after the collision advised him, (Brown) that the engine was running open, and the throttle was stuck.

A review of the photographs of the subject vehicle show the outer, throttle cable housing is corroded and is now equipped with a non-standard cable cover. This would confirm that throttle problems pre-existed the accident and that inadequate repair had been attempted.



P.O. Box 08489
15951 McGregor Boulevard Fort Myers, Florida 33908-2568
(941) 482-0500 Fax (941) 482-2941

Michigan Affiliate

Miami Affiliate

Vienne/DZBM
Page 2

This information is consistent with an accident sequence previously described where the throttle became stuck in an open position due to maintenance problems with the vehicle. Vienne recognized the stuck throttle problem, and due to his close proximity to the steel gate he exited the vehicle. The vehicle continued to run with a stuck open throttle, traveling under power and impacted the gate forcefully. The collision with the gate, at an elevated speed caused damage to the ATC and the steel gate that has been noted.

This additional information further confirms our previous finding that the cause of the accident is most likely related to known maintenance problem(s) and improper Operator decisions. The accident sequence was not initiated or affected by the handling or stability characteristics of the ATC. This further confirms that the design or operating characteristics did not cause or contribute to this accident or Mr. Vienne's injuries.

Though no vehicle should continue to be used with a throttle that has a history of the throttle becoming stuck in an open position, the 1984 Honda ATC 200S is equipped with a handlebar mounted "engine switch" that will over-ride a stuck throttle and shut off the engine. Further, properly maintained brakes on the vehicle will stop the vehicle with the throttle stuck open.

If you have any questions or if additional materials become available feel free to contact us.

Respectfully submitted,

Kevin C. Breen

Neil Cichy

DZISM
12.21.00   WC/PG

EXEMPLAR '84 ATC 200S / BRAKE-THROTTLE TESTING

- F/R BRAKES - FULL THROTTLE

  STOPS AT 15/25/30 MPH
  AT 30 MPH, $d \sim 36$ FT $\Rightarrow \sim 0.8g$

- F/BRAKE ONLY - NO THROTTLE

  $\left.\begin{array}{l} 25 \text{ MPH} \\ d \sim 35 \text{ FT} \end{array}\right\} \sim 0.7g$

- F/BRAKE ONLY - FULL THROTTLE

  DOES NOT STOP AT 20/25/30 MPH

- F/BRAKE ONLY - CONSTANT THROTTLE

  DOES NOT STOP AT 20/25 MPH

1

# Breen & Associates, Inc.
### Research Consultants

Since 1989

## CURRICULUM VITAE

### Roger A. Spiegler

Breen & Associates, Inc. is an independent research based consulting firm providing clients technical information related to accident analysis, human factors, environmental management, and product/materials safety. Founded in 1989, the firm's staff includes scientists, engineers, and researchers supported by a research facility, graphics group, and field investigation teams. Clients currently include manufacturers, insurance companies, law firms, financial/real estate institutions, governmental organizations, and individuals. Based in Fort Myers, Florida, with affiliated offices in Miami and Michigan, the firm is providing technical and investigation services throughout the U.S., Canada, Europe, and the Caribbean.

## AREAS OF SPECIALIZATION

Accident Investigation
Close Range Photogrammetry
AutoCAD
Technical Illustrations
Model Making

## EDUCATION

Bachelor of Science in Graphic Arts Technology
Associates in Arts in Art and Industrial Design

## ADDITIONAL TRAINING

Automotive Investigations
ASPRS Seminars, Photogrammetrics
AutoCAD 2000
AutoCAD Map



DEFENDANT'S EXHIBIT "D"

P.O. Box 08489
15951 McGregor Boulevard Fort Myers, Florida 33908-2568
(941) 482-0500 Fax (941) 482-2941

Michigan Affiliate                                        Miami Affiliate

# PROFESSIONAL EXPERIENCE

1991 – Present

K. C. Breen & Associates, Inc
Fort Myers, Florida

Senior Researcher. Responsible for project support in the areas of accident investigation, site and product documentation, close range photogrammetry analysis, high speed cinematography, video animation, court displays, patent drawing analysis, electrical schematics, field video, engineering graphics, CADD, photography, and model making.

1977 – 1990

Packer Engineering, Inc
Naperville, Illinois

Coordinator of Graphic Services. Responsible for photogrammetry, video, photography, accident investigation and site documentation, high speed-cinematography for use in courtroom/boardroom displays, and instructional and promotional presentations.

1976 - 1977

Bell Laboratories
Naperville, Illinois

Engineering Graphics. Responsible for occupancy planning and plant engineering group. Maintained all lab and building layouts and plans.

1975 – 1976

ALPHA Technical Services
Lisle, Illinois

Technical Graphic Artist. Graphic artist providing artwork for slides, view graphs, court displays, electrical schematics, and circuit boards.

## ADDITIONAL COURSE / SEMINARS

| | | |
|---|---|---|
| AutoCAD 2000 Autodesk Seminar | Ft. Myers, Florida: | 1999 |
| AutoCAD Land Development Autodesk Seminar | Ft. Myers, Florida: | 1999 |
| AutoCAD Map 14 Autodesk Seminar | Ft. Myers, Florida: | 1998 |
| AutoCAD 14 Autodesk Seminar | Ft. Myers, Florida: | 1997 |
| Nikon School of Photography | Miami, Florida: | 1996 |
| Fundamental of CAD | College of DuPage, Illinois: | 1985 |

ASP–ACSM– State-of-the-art Close Range
Photogrammetry and Surveying                           San Antonio, Texas  1984

Accident Reconstruction Seminar                        Naperville, Illinois  1980

## PROFESSIONAL AFFILIATIONS

ITVA:      International Television Association

ASPRS:     American Society for Photogrammetry and Remote Sensing

## PUBLICATIONS

Technical Aspects of Phase I/II Environmental Site Assessments        1999
(Cover Photo)

Pulp and Paper Manufacture Vol. 9, Chapter 10, Third Edition          1992
(Illustrations)

Standard Welding Terms and Definitions, A3.0-89                       1989
(Illustrations)

ASW American Welding Society – Welding Journal
"A New Welding Qualification Standard"
(Cover and Lead Photo)                                               1978

January 2001

1

COPY

1          UNITED STATES DISTRICT COURT

2         EASTERN DISTRICT OF LOUISIANA

3              NEW ORLEANS DIVISION

4

5   JAMES T. VIENNE            CASE NO.:  99-3716

6        Plaintiff            SECTION "N"

7   VERSUS                    JUDGE:  EDITH B. CLEMENT

8   AMERICAN HONDA MOTOR      MAG:  KAREN W. ROBY
    CO., INC., A Foreign
9   Corporation, HONDA
    NORTH AMERICA R&D, INC.,
10  A Foreign Corporation,
    HONDA MOTOR CO., LTD.,
11  A Foreign Corporation,
    HONDA R&D CO., INC., A
12  Foreign Corporation,
    ABC INSURANCE COMPANY,
13  and XYZ INSURANCE COMPANY
             Defendants

14

15          Deposition of ROYCE BROWN, given in

16  the above-entitled cause, pursuant to the

17  following stipulation at the offices of Duplass,

18  Zwain, Bourgeois & Morton, 3838 North Causeway

19  Boulevard, Three Lakeway Center, Suite 2900,

20  Metairie, Louisiana  70002, on the 14th day of

21  December, 2000.

22

23

24  REPORTED BY:

25  CONNIE R. CRUMHORN
    CERTIFIED COURT REPORTER



DEFENDANT'S
EXHIBIT
"E"

**JOHNS, PENDLETON & ASSOCIATES, INC.**
CERTIFIED COURT REPORTERS
710 PHOSPHOR AVENUE                    619 JEFFERSON HIGHWAY SUITE 2G
METAIRIE, LA 70005                     BATON ROUGE, LA 70806
(504) 219-1993 • (800) 562-1285

```
 1   you know.
 2        Q.    Who goes hunting with James?
 3        A.    His brother, David Vienne.
 4        Q.    Anyone else?
 5        A.    They got a lease and I think probably
 6   got fifteen guys in it or whatever.  I really
 7   don't know too many of their names.  I know maybe
 8   one of them, you know.
 9        Q.    Do you have any knowledge regarding what
10   caused James' accident?
11        A.    No.
12        Q.    Have you ever operated James' three-
13   wheeler?
14        A.    No, sir.
15        Q.    Do you know if anyone has operated
16   James' three-wheeler since his accident?
17        A.    No, sir.
18        Q.    Have you ever heard anything from anyone
19   or from any source regarding anyone ever having
20   had problems with that three-wheeler before
21   James' accident?
22        A.    No, I don't.
23        Q.    Have you ever heard anyone talk about
24   that three-wheeler having a problem with a
25   sticking throttle?
```

**JOHNS, PENDLETON & ASSOCIATES, INC.**
CERTIFIED COURT REPORTERS
710 PHOSPHOR AVENUE
METAIRIE, LA 70005
(504) 219-1993 • (800) 562-1285

619 JEFFERSON HIGHWAY SUITE 2G
BATON ROUGE, LA 70806
(225) 922-4527

1     A.    After the accident, I heard it.

2     Q.    Who did you hear that from?

3     A.    From David, his brother.

4     Q.    David?  What did David tell you?

5     A.    He just said that he tried, they tried

6  to unstick it one time before, you know, with it

7  sticking.  They had problems with it in the past,

8  you know.  And he said that they had a, the day

9  of the accident, he said the throttle was stuck

10 because when he got to the accident, the bike was

11 just running wide open.

12    Q.    When did David tell you this?

13    A.    The night of the accident.

14    Q.    Did David tell you anything about the

15 accident?

16    A.    Just that they got two gates that they

17 go through, and David had stopped to open up the

18 first gate, and James went through, and James

19 usually goes and opens up the second gate, and he

20 said by the time he got there, the accident

21 already happened.  He told me that he, you know,

22 hit the fence post.  That caught --

23    Q.    Do you know if anyone saw the accident

24 occur?

25    A.    No, sure don't.  To my knowledge, no.

**JOHNS, PENDLETON & ASSOCIATES, INC.**

CERTIFIED COURT REPORTERS

710 PHOSPHOR AVENUE
METAIRIE, LA 70005
(504) 219-1993 · (800) 562-1285

619 JEFFERSON HIGHWAY SUITE 2G
BATON ROUGE, LA 70806
(225) 922-4527

14

1    Q.   Based upon your conversation with David

2   on the night of the accident, is it your

3   understanding that David believed the throttle

4   had stuck at the time of James' accident and, in

5   fact, that's what caused the accident?

6    A.   Yes.

7        MR. MAGINNIS:

8            Object to the form of the question.

9   BY MR. VALDIN:

10    Q.   What's your answer?

11    A.   Yes.

12    Q.   Did he specifically tell you that, that

13   the throttle sticking was the cause of James'

14   accident?

15    A.   I mean, he said that the throttle was

16   stuck.  That made him hit the fence, you know, at

17   that speed and caused the accident.

18    Q.   And the engine was running wide open

19   when David arrived at the scene?

20    A.   It was running, yes.  I don't know if it

21   was wide open.  I know it was open, you know, it

22   was running stuck.

23    Q.   So the throttle was stuck when David

24   came upon the scene?

25    A.   Yes.

**JOHNS, PENDLETON & ASSOCIATES, INC.**

CERTIFIED COURT REPORTERS

710 PHOSPHOR AVENUE
METAIRIE, LA 70005
(504) 219-1993 • (800) 562-1285

619 JEFFERSON HIGHWAY SUITE 2G
BATON ROUGE, LA 70806
(225) 922-4527

```
 1      Q.    Is that a yes?
 2      A.    Yes.
 3      Q.    And David told you that?
 4      A.    Yes, sir.
 5      Q.    Did David tell you what James was doing
 6   at the time of the accident other than just going
 7   to the next gate to open it?
 8      A.    No.
 9      Q.    Did he tell you whether there was
10   anything on his vehicle?
11      A.    No.
12      Q.    Did David tell you that he believed the
13   three-wheeler had malfunctioned in any other way
14   than a sticking throttle?
15      A.    Not to my knowledge, no.
16      Q.    Have you ever spoken with James
17   regarding his accident?
18      A.    No.  Because he don't remember anything.
19      Q.    I see.  So you guys have chatted about
20   it, and he just doesn't remember anything at all?
21      A.    He doesn't remember.
22      Q.    Was anyone else present when you and
23   David had the conversation regarding the sticking
24   throttle?
25      A.    They had a few guys around there.  I
```

**JOHNS, PENDLETON & ASSOCIATES, INC.**

CERTIFIED COURT REPORTERS

710 PHOSPHOR AVENUE
METAIRIE, LA 70005
(504) 219-1993 • (800) 562-1285

619 JEFFERSON HIGHWAY SUITE 2G
BATON ROUGE, LA 70806
(225) 922-4527